# IN THE COURT OF APPEALS OF IOWA

No. 22-0458
Filed January 25, 2023

**ZACH THIELEN and TATIANA Y. THIELEN,**
 Plaintiffs-Appellants,

**vs.**

**RANDALL E. ANDERSON and REBECCA S. ANDERSON,**
 Defendants-Appellees.
_____

Appeal from the Iowa District Court for Cass County, James S. Heckerman,

Judge.

The Thielens appeal the dismissal of their action to partition jointly owned

real estate. **REVERSED AND REMANDED FOR FURTHER PROCEEEDINGS.**

Jonathan Mailander of Mailander Law Office, Atlantic, for appellants.

Blake C. Miller of Crary, Huff, Ringgenberg, Hartnett & Storm, P.C., Sioux

City, for appellees.

Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**GREER, Judge.**

On October 1, 2013, Jean Wolfe deeded Cass County property to Tatiana Anderson, now Thielen, and her father and mother, Randall and Rebecca Anderson, as tenants with full rights of survivorship.[1]  With a desire to sell her interest in the residential real estate, Tatiana and her husband, Zach Thielen,[2] petitioned for a partition by sale of the property in June 2021.  But, focusing on the equitable interests of the parties in the real estate, the Andersons asserted Tatiana was not a joint owner and, thus, could not accomplish her goal.  The district court agreed and dismissed the partition action, directing the Andersons to pursue their action to quiet title.  The Thielens appeal from that dismissal.  We reverse the dismissal of the partition action and remand for further proceedings.

The Andersons claim they purchased the Cass County property for $7000 and Tatiana paid nothing toward the purchase price.  Tatiana concedes those facts.  In what became the fighting issue, the property was purchased purportedly as part of an estate plan, and the Andersons and their son, who also testified, intended that Tatiana inherit a full interest in the property when the parents died.  Other real estate would go to the other Anderson siblings under a similar plan.  Yet

---

[1] As one of our panels described:
> "Joint tenancy property is property held by two or more parties jointly, with equal rights to share in the enjoyment of the whole property during their lives, and a right of survivorship which allows the surviving party to enjoy the entire estate."  "Thus, a joint tenant owns an undivided interest in the entire estate to which is attached the right of survivorship."

*Grout v. Sickels*, No. 21-0556, 2022 WL 610439, at *3, (Iowa Ct. App. Mar. 2, 2022) (citations omitted), *further review granted* (June 3, 2022).

[2] Tatiana and Zach were married in 2016.  His only interest in the property is one of dower.

in their pleadings, the Andersons noted that the "warranty deed to the Property named Defendant Randall Anderson, Defendant Rebecca Anderson, and Tatiana as one-third joint tenants with rights of survivorship." Thus, the question becomes does Tatiana have a present interest in the property as the deed suggests or a future interest in the property as the Andersons claim was supposed to be the plan.

Complicating matters, when the property was purchased, there was a house on the lot, which was in a poor condition. The Andersons estimated they spent more than $22,000 to repair and replace the roof.[3] Tatiana contributed nothing. The same arrangement occurred over the interior remodel—the Andersons paid for it, Tatiana did not. All in all, the Andersons testified they expended more than $61,000 toward the purchase price, real estate taxes, insurance, and maintenance of the property. Tatiana contributed nothing. Yet, Tatiana did do hands-on maintenance on the home even though she never lived there. Other than the written real estate deed, there are no writings clarifying the arrangement between the parties concerning this real estate and responsibility for any expenditures.

In the dismissal ruling, the district court described an intent by Tatiana and her parents that "Tatiana [not] have an actual present ownership interest in the Real Estate as a joint tenant, but that solely Randall and Rebecca owned and were responsible for the Real Estate." The court echoed the estate plan described by the Andersons and noted the "understanding" was that the parents would leave the real estate to Tatiana *only* at their deaths.[4] Because the district court found

---

[3] The Andersons also converted the home into a duplex and lived there off and on during the years since the purchase.

[4] The district court noted evidence of the use of the property and payments for improvements "corroborates" the Andersons' intention.

that the Thielens had no current interest in the property, they were not entitled to any relief under the partition action. The court then directed the Andersons to file an action to quiet title, indicating that title needed to be "clarified."

In other words, contrary to the written documentation, the district court found that the intent of the parties was that Tatiana not have a present interest in the property but only an interest after the death of her parents. To that end, the district court reformed the deed to express the real intent of the parties and ruled that neither Thielen had an interest in the property. But to achieve a reformation of the deed, the Andersons had the burden to show that a mutual mistake of a material fact was made in the written instrument. *See Westcott v. Westcott*, 259 N.W.2d 545, 548 (Iowa Ct. App. 1977). And "[o]ne who contends a writing does not express the real agreement between the parties or who seeks reformation of a contract has the burden of establishing his contentions by clear, satisfactory and convincing proof." *Id.* at 547–48. Here, there is no mutual mistake over the terms of the deed. When asked about Tatiana's legal ownership interest in the property, Randall characterized her current interest as "[a] third owner, yes." Likewise, Randall was not so clear as to any agreement between the Andersons and Tatiana. As far as any specific agreement over the property ownership, Randall said:

> I recall conversations, but nothing in writing, nothing concrete. You know how a family just gets together and they talk about their inheritance? We have our farm, we have this and we have that and things were talked about. I know one son, Ethan, wanted my muzzle loader, so I jokingly—you could have my muzzle loader. You know, just different things we just—as a family we joked around, but there was nothing serious as far as getting it in writing.

Moreover, Tatiana understood the deed to give her a current interest. She testified

> Q. Can you describe how it came to be that you and your parents took title to this property?  A. They called me and said that we were purchasing the property and that they were putting it as a joint tenancy so it was in both of our names.
>
> Q. And did they say why they were doing that?  A. So that it would be—there would be no complications or anything.  That it would be my house, and I would have access to it.

And the testimony of Tatiana and her brother, Randall Jr., did not confirm the understanding that the children would own the land only after the parents' deaths.[5] Considering the record made, we find the Andersons failed to prove by clear, satisfactory, and convincing proof a mutual mistake in the terms of the written deed.

Still, the district court found that the mistake did not have to be mutual and that it could "reform the deed to express the intentions of the grantor even though, strictly speaking, the mistake is not mutual."  The trouble is, the Andersons are not the grantors; Wolfe was.  And there is no evidence in this record to suggest what her intentions were—other than those stated in the deed—so we cannot reform the deed to conform to her intentions.  So again, the evidence does not allow reformation of the warranty deed.  The district court erred by reforming the deed.

This finding conforms with our supreme court determination that a district court may not simply determine "the intent of the part[ies] under the facts and then fullfill it," rather, "it seems fundamental that intent must be derived from an

---

[5] Randall Jr. said:
> And that was the way I took it at first until they had another discussion to where they were saying all the different properties were ours.  That's why it was two separate conversations.  They change their mind a lot, and that's why it's hard to explain that they said one thing and then they changed their mind a week later, so there's two separate conversations is what happened.

instrument effectuating the intent to sever the joint tenancy." *In re Est. of Johnson*, 739 N.W.2d 493, 498–99 (Iowa 2007) (noting that while intent of the parties is important in Iowa, courts should look to find their intent in the instrument that attempts to sever the joint tenancy). "[I]ntent unaccompanied by some action or instrument sufficient to corroborate and give effect to that intent will not create, sever, or terminate a joint tenancy." *Id.* at 499. Certainly, that is what the deed would provide once the parents passed, but what is not in the deed or any other written document is that Tatiana *does not* have a present interest in the property. To reform the deed at this stage and make the Andersons the sole owners of the property would cut out Tatiana's current right to the property on the contingency that she would have a full interest in the property at their death. So, effectively, the district court terminated any transfer of the parents' interest of the property to Tatiana at her last surviving parent's death—which was the Andersons' stated intent behind the deed.

One final concern remains. Referencing Iowa Code section 651.7 (2021), the district court noted that the Andersons counterclaimed to quiet title to the real estate, but the court believed a counterclaim could not be permitted in the partition action. But that section provides:

> A party may perfect or quiet title to property that is subject to a partition petition or request adjudication of a right of a party as to any matter originating from or connected to the property, including a lien between any parties. Except as permitted by this section, a joinder of any other claim to a partition petition shall not be permitted. A counterclaim to a partition petition shall not be permitted.

Iowa Code § 651.7. Here, although the Andersons crafted their request to quiet title as a counterclaim, the language of the statute permits a party to "perfect or

quiet title to property that is subject to a partition petition." Otherwise, the language "*[e]xcept as permitted by this section*" would have no meaning. *Id.* (emphasis added). So, we find the district court erred by determining the quiet title action should occur in a separate proceeding. Because the partition action can continue to determine Tatiana's interest in any proceeds from the property sale, any remaining issues over the title to property can also be determined in the same proceeding.

The Thielens applied for an initial decree under section 651.12 and asked that the court appoint a referee to set out recommendations over the partition of the property. Section 651.12 provides:

> The court shall file an initial decree establishing the shares and interests of all owners in a property subject to a partition petition. One referee shall be appointed in the decree unless all owners of the property agree upon a larger number of referees. The decree shall order an appraisal or estimation of the valuation of the property and may direct either a public or private sale of the property. Unless all owners of the property agree to an alternative method for conducting the appraisal or of estimating the valuation of the property, the decree shall appoint three disinterested persons with knowledge of property valuation to appraise the property. The decree shall direct the referee to file a report with the court setting forth the referee's recommendations for completing the partition of the property. All other contested issues related to the partition petition, including liens, may be determined by the initial decree or by a supplemental decree or decrees.

Because we find that the dismissal of the partition action was premature, we direct the district court to follow the steps set out in the partition process after a determination is made related to the shares and interests of all owners of the

property.[6]   We reverse the dismissal of the partition action and remand to the district court for further proceedings.

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

---

[6] It is premature here to address the Andersons' claims over expenditures made to improve the property and how that plays into the final distribution of shares.  This will be sorted out by the appointed referee.  *See Coyle v. Kujaczynski*, 759 N.W.2d 637, 642 (Iowa Ct. App. 2008) ("[T]he law of partition, as well as general equitable principles, provides for reimbursement of the contributions of the parties and an equal division of any remaining proceeds.").